UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Modern Eminence, LLC, et al., | Case No. 2:24-cv-00348-CDS-EJY |
| Plaintiffs | **Order Regarding Pending Motions and Transferring Counts II, III, and IV** |
| v. | |
| Nathan Park, | [ECF Nos. 16, 17, 23, 24] |
| Defendant | |

Plaintiffs Modern Eminence, LLC, Modern Fortress, Inc., and AllRealms, Inc. are companies involved in the modular home manufacturing and construction business. Am. compl., ECF No. 6 at 2–3. In their amended complaint, they allege that after defendant and construction company owner Nathan Park learned that Modern Fortress and Modern Eminence would not hire him or his companies, Park embarked on a campaign to scuttle numerous major business deals organized by the plaintiffs. *Id.* at 2–5. Pending before the court are defendant's motion to dismiss (ECF No. 16), defendant's motion to stay the deadline for responses to the remaining claims (ECF No. 17),[1] plaintiff's motion to amend their amended complaint (ECF No. 24), and plaintiff's alternative motion to transfer venue (ECF No. 23).

Because this court cannot exercise personal jurisdiction over Modern Fortress or Modern Eminence—and because there is already related litigation pending before a court that can—I deny defendant's partial motion to dismiss without prejudice and grant in part plaintiff's request to transfer Counts II, III, and IV to the Federal District Court for the Northern District of Texas, Dallas Division. I further grant defendant's request stay the deadline to respond to the dismissal motion on Counts I and V.

---

[1] ECF Nos. 16 and 17 are identical in content, but ECF No. 16 is filed as the motion to dismiss and ECF No. 17 is filed as the motion to stay.

I.  Background

This controversy arises out of an ongoing dispute between plaintiffs Modern Eminence, Modern Fortress, and AllRealms, Inc., and Defendant Park. In their complaint, plaintiffs allege that Park signed a "Convertible Promissory Note" with AllRealms agreeing that he would "keep confidential and [would] not disclose, divulge, or use for any purpose (other than to monitor [his] investment in [AllRealms]) any confidential information obtained from [AllRealms] other than disclosure to [Defendant's] attorneys, accountants, consultants, and other similar professionals, to the extent necessary to obtain their services in connection with monitoring [Defendant's] investment in [AllRealms]." ECF No. 6 at 2. AllRealms is a Utah corporation, but the Note explicitly "calls for the application of Nevada law and for venue in either Nevada state court or federal court." *Id.* at 1–2. Related are Modern Eminence, a Nevada limited liability company (LLC), and Modern Fortress, a Utah corporation owned by Modern Eminence. *Id.*

According to plaintiffs' complaint, after executing the Note with AllRealms, Park sought to contract his construction business with Modern Eminence and Modern Fortress. *Id.* at 3. When the companies rebuffed him, they allege that he took steps to damage multiple business deals Modern Eminence and Modern Fortress were attempting to reach with others. *Id.* at 3–4. Plaintiffs filed this action against Park for (I) breach of contract for an alleged breach of the Note; (II) tortious interference with contractual relations involving a deal to which Modern Fortress was a party; (III) wrongful interference with prospective economic advantage involving a deal to which Modern Fortress was a party; (IV) wrongful interference with prospective economic advantage involving a deal to which Modern Eminence was a party; and (V) breach of implied covenant of good faith and fair dealing as an alternative to Count I. *Id.* at 5–7.

In his motion to dismiss, Park argues that plaintiffs fail to establish that this court possesses personal jurisdiction over the claims involving Modern Eminence and Modern Fortress (Claims II, III, and IV). ECF No. 16 at 5–6. Park also notes that he currently has a lawsuit that predates this one pending against plaintiffs for fraud and conspiracy to commit

fraud, initially filed in Texas state court but since removed to the United States District Court for the Northern District of Texas, Dallas Division. *Id.* at 2–3.[2]

In two successive filings, plaintiffs argue that they have established personal jurisdiction but also seek leave to amend their complaint once again and, in the alternative, move to transfer Counts II and IV to the United States District Court for the Northern District of Texas, Dallas Division, and Count III to the United States District Court for the Western District of Texas, Waco Division. ECF No. 23 at 8–13; ECF No. 24 at 1–2.

## II. Discussion

### A. This court lacks the personal jurisdiction to adjudicate plaintiffs' claims.

#### *1. Legal standards*

"Personal jurisdiction must exist for each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (citing *Data Disc., Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1289 n.8 (9th Cir. 1977)). "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction." *Learjet, Inc. v. Oneok, Inc. (In re W. States Wholesale Natural Gas Antitrust Litig.)*, 715 F.3d 716, 741 (9th Cir. 2013) *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015). However, to carry this burden, a plaintiff need only make "a prima facie showing of jurisdictional facts." *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007). When conflicts exist between the statements made in the affidavits submitted by each party, courts resolve these conflicts in the plaintiff's favor. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) ("The court resolves all disputed facts in favor of the plaintiff.").

---

[2] As of the filing of the motion to dismiss, there was a pending motion to dismiss and motion to transfer venue to the District of Nevada. ECF No. 17 at 2–3. Neither party has provided this court an update on these proceedings and no transfer has been initiated as of the filing of this order. Therefore, I will assume that these motions remain pending.

Where, as in this case, "no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citations omitted). Nevada's long-arm statute, set forth at NRS 14.065, coincides with federal due process requirements. Those requirements mandate that nonresident defendants have "minimum contacts" with Nevada "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted). "[T]he defendant's conduct and connection with the forum [s]tate [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Personal jurisdiction can be either "general" or "specific." *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415–16 (1984). On a prima facie showing, the court resolves all contested facts in favor of the non-moving party. *Oneok*, 715 F.3d at 741; *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (if conflicted facts are contained in the parties' affidavits, the facts must be resolved in favor of the plaintiff for purposes of determining whether a prima facie case of personal jurisdiction has been established).

Nonetheless, a plaintiff may not simply rest on the "bare allegations of [the] complaint." *Id.* (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)). If the defendant presents evidence to contradict the allegations in the complaint, the plaintiff must go beyond the pleadings and present affirmative proof of personal jurisdiction through affidavits and/or declarations. *See AT&T*, 94 F.3d at 588; *accord Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 127–28 (9th Cir. 1995) (absent an evidentiary hearing, this court "only inquire[s] into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction.").

### 2. *Plaintiffs' amended complaint does not establish personal jurisdiction.*

The only allegations tethered to Nevada in plaintiff's amended complaint are (1) the forum selection clause in the note signed between defendant and AllRealms and (2) the assertion that Modern Eminence is a Nevada LLC. ECF No. 6 at 1, 2. Park resides in Texas.

*Id.* at 1. Modern Fortress is a Utah corporation. *Id.* Plaintiffs reference several business deals that Park allegedly thwarted, all either in Texas or lacking a specified location. *Id.* at 3–4. The parties agree that plaintiffs have not established general jurisdiction over Park in Nevada—plaintiffs do not challenge Park's assertion that no general jurisdiction exists. ECF No. 16 at 6; ECF No. 23 at 5 ("Plaintiffs concede this Court does not have general personal jurisdiction over Defendant."). So I turn to specific jurisdiction.

Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Calder v. Jones*, 465 U.S. 783, 788 (1984) (internal quotation marks and citation omitted). In the Ninth Circuit, a three-part test is applied to determine whether the exercise of specific jurisdiction over a nonresident defendant is appropriate. *Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). First, the nonresident defendant must purposefully direct his activities or complete some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. *Id.* Second, the claim must be one which arises out of or relates to the defendant's forum-related activities. *Id.* Finally, the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable. *Id.* The first prong of the specific jurisdiction test refers to both purposeful availment and purposeful direction. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).

Plaintiffs acknowledge that Modern Eminence's sole member is AllRealms, but the forum selection clause in the note signed between AllRealms and Park alone is not sufficient to establish this court's personal jurisdiction over Modern Eminence. In cases involving related business entities, "a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015). In fact, the Ninth Circuit

holds that "corporate separateness insulates a parent corporation from liability created by its subsidiary." *Id.*

Therefore, the remaining allegation intimating that Park had contact with Nevada is that Modern Eminence is a Nevada LLC. An LLC "is a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). But this does not demonstrate Park had contact with Nevada: "[t]o have purposefully availed [him]self of the privilege of doing business in the forum, [Park] must have 'performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (citation omitted). And the amended complaint does not attest to the citizenship of any of the members or owners of Modern Eminence. When evaluating its jurisdiction, a court may consider facts outside of the four-corners of the complaint to assure itself that it does, in fact, have the power to hear this matter. *Americopters, LLC v. FAA*, 441 F.3d 726, 732 n.4 (9th Cir. 2006). However, no additional evidence has been proffered here on which I could surmise that Park had any, even remote, contact with Nevada. Because plaintiffs cannot establish that this court has personal jurisdiction over the Modern Eminence claims, there is no need here to analyze whether this court has pendent jurisdiction over the claims related to Modern Fortress. *See Maadanian v. Mercedes-Benz USA, LLC*, 2023 U.S. Dist. LEXIS 79103, at *10–11 (W.D. Wash. May 5, 2023) (citing *Action Embroidery*, 368 F.3d at 1180 (citing *U.S. v. Botefuhr*, 309 F.3d 1263, 1272–75 (10th Cir. 2002) (requiring that the court have personal jurisdiction over a claim in an action before exercising pendent jurisdiction))). Therefore, the amended complaint fails to establish that this court has personal jurisdiction over plaintiffs' Claims II, III, and IV.

### 3. *Plaintiffs' proposed second amended complaint does not cure the jurisdictional defects.*

Plaintiffs seek leave of court to amend their complaint a second time. ECF No. 24. They argue that this amendment would "add additional detail to their factual allegations that will

better inform the Court and Defendant about the nature of the disputes, . . . better establish the Court's ability to exercise personal jurisdiction over all of Plaintiffs' claims, and [they seek] to revise Count II of their Amended Complaint." *Id.* at 4.

Under Rule 15(a), "court[s] should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a). "Several factors govern the propriety of a motion to amend: (1) undue delay, (2) bad faith, (3) prejudice to the opponent, and (4) futility of amendment." *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986) (citation omitted). However, a court need not grant leave to amend when permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

Here, granting plaintiffs leave to amend their complaint again, which they attach to their motion (ECF No. 24-1), would be an exercise in futility—the amendments do not adequately establish how Park's alleged conduct touched Nevada nor demonstrated the required "minimum contacts" with this state. They merely allege in greater detail that Park emailed "multiple uncomfortable questions" to Kristina Brown, a Modern Eminence employee, that ultimately led to a grant funding application being denied. ECF No 24-1 at 7. At no point do they establish where Kristina Brown lives or where she was when she received those alleged emails. The fact she was an employee of Modern Eminence, a Nevada LLC, is not enough for me to find that Park made minimum contacts with Nevada, especially because plaintiffs in their proposed second amended complaint still do not acknowledge the citizenship of any of the members or owners of Modern Eminence. Plaintiffs also allege that Park caused a woodworking machinery company under contract with Modern Fortress to "refuse to fulfill its contract[.]" *Id.* "The loss of this manufacturer has cost Modern Fortress at least $1 million and set back its business operations in Texas, Nevada, Idaho, and Nebraska by at least 4 months[,]" which they allege caused harm to Nevada because "Modern Fortress would have been able to construct a [Structural Insulated

Panel (SIP)] manufacturing plant in Mesquite, Nevada if not for Defendant's interference[.]" *Id.* at 8. However, this mere speculation is not enough to establish minimum contacts with the forum state. *See, e.g., Hampton/SHL Inv. Co. v. Arnold Indus., Inc.*, 1999 WL 61422, at *5 (N.D. Tex. Jan. 27, 1999) ("[M]ere contractual negotiations and attendant correspondence with a forum plaintiff are not minimum contacts necessary for personal jurisdiction."); *New Lenox Indus., Inc. v. Fenton*, 510 F. Supp. 2d 893, 902 (M.D. Fla. 2007) ("[M]erely discussing a discrete offer for employment is not sufficient to establish that Fenton was conducting a general course of business in Florida."). Here, plaintiffs do not even allege that plans were discussed to construct an SIP in Nevada, only that they "*would have* been able" to build one. ECF No. 24-1 at 8 (emphasis added). If this were sufficient minimum contacts, then any future claimant seeking relief under a breach of contract—or certain torts—could establish minimum contacts with Nevada by stating that they "*would have* been able to" spend the money in Nevada. This is far afield from the "minimum contacts" contemplated by *International Shoe*. I find that, even with the details plaintiffs ostensibly provide in their proposed second amended complaint, they fail to establish that this court has personal jurisdiction over the claims. The proposed amendment is therefore futile, so I deny plaintiffs' motion to amend.

### B. Venue transfer is appropriate.

The transfer of civil actions among federal courts to cure jurisdictional defects is governed by 28 U.S.C. § 1631. *Cruz-Aguilera v. I.N.S.*, 245 F.3d 1070, 1074 (9th Cir. 2001). Transfer is appropriate under § 1631 if three conditions are met: (1) the transferring court lacks jurisdiction; (2) the transferee court could have exercised jurisdiction at the time the action was filed; and (3) the transfer is in the interest of justice. *See Kolek v. Engen*, 869 F.2d 1281, 1284 (9th Cir. 1989). "Normally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is 'time consuming and justice-defeating.'" *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990) (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962)). When evaluating if transfer is in the interest of justice, courts have considered whether the failure to

transfer would prejudice the litigant and whether the litigant filed the original action in good faith, among other equitable factors. *See Liriano v. United States*, 95 F.3d 119, 122 (2d Cir. 1996) (weighing the litigant's good faith where new habeas statute imposed new procedural requirements and concluding transfer warranted); *Janicki Logging Co. v. Mateer*, 42 F.3d 561, 567 (9th Cir. 1994) (finding that the bad faith actions of the litigant militated against transfer); *Kolek*, 869 F.2d at 1284 (finding transfer in the interest of justice because litigant was pro se, was not fluent in English, and had limited access to legal research materials in prison).

Plaintiffs, in their response to the motion to dismiss, move that this court, absent jurisdiction, transfer this case.[3] ECF No. 23 at 11–12. Specifically, they seek to have Counts II and IV transferred to the United States District Court for the Northern District of Texas, Dallas Division and Count III transferred to the United States District Court for the Western District of Texas, Waco Division. *Id.* at 12. Based on Park's representations, which the plaintiffs do not refute, there is a related case involving these parties already pending in the United States District Court for the Northern District of Texas, Dallas Division after its removal from Texas state court. *See* ECF No. 16 at 2. Given that there appears to be ongoing litigation involving these parties and, though little information is provided, it appears to also involve similar aspects of the relationship between the parties, these claims could have been filed as counterclaims by the plaintiffs—who are the defendants in the Texas lawsuit. Further, it is undisputed that Park is a resident of Texas, so the Texas court would have general personal jurisdiction over him. *See Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ." (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011))).

---

[3] Plaintiffs cite 28 U.S.C. § 1404(a) which is the transfer statute that addresses "convenience of the parties and witnesses[.]" Here, the appropriate transfer statute is 28 U.S.C. § 1631 as this would be transfer to cure want of jurisdiction. Thus, I construe plaintiffs' response and motion to be discussing 28 U.S.C. § 1631 transfer.

Although plaintiffs request that Count III be transferred to the United States District Court for the Western District of Texas, they do not explain why this claim cannot be resolved in the same court as the others. Having already found that this court does not have jurisdiction and the Northern District of Texas does, I must evaluate whether transfer is in the interests of justice. This court has not been presented with proof that plaintiffs' claims were made in bad faith, and the alternative to transfer—dismissal, even if done without prejudice—could ultimately prejudice the plaintiffs, who would have to go through the time and expense of refiling this case in another district. Thus, in the interests of justice, I transfer Counts II, III, and IV to the United States District Court for the Northern District of Texas, Dallas Division. To the extent plaintiffs believe Count III should be in the Western District of Texas, they should seek relief out of the Northern District of Texas.

**C.   The deadline for Park to respond to Counts I and V is retroactively stayed.**

A defendant is not required to file a responsive pleading on unchallenged claims until fourteen days after the court has rendered its decision on the motion. Fed. R. Civ. P. 12(a)(4)(A). Therefore, Park has until December 23, 2024, to provide responsive briefing on Counts I and V.

**III.   Conclusion**

IT IS HEREBY ORDERED that defendant's partial motion to dismiss **[ECF No. 16] is DENIED without prejudice.**

IT IS FURTHER ORDERED that defendant's motion to stay deadline to respond to remaining claims **[ECF No. 17] is GRANTED.**

IT IS FURTHER ORDERED that plaintiffs' motion for leave to amend their complaint **[ECF No. 24] is DENIED.**

IT IS FURTHER ORDERED that plaintiffs' motion to transfer venue **[ECF No. 23] is GRANTED in part and DENIED in part.**

The Clerk of Court is directed to **TRANSFER COUNTS II, III, and IV of this case to the Northern District of Texas, Dallas Division and to terminate in this district plaintiffs Modern Fortress, Inc. and Modern Eminence, LLC.**

Dated: December 6, 2024

_____
Cristina D. Silva
United States District Judge